## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **CEDRIC HOWARD,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:09-CV-2074-K** |
| | § | **ECF** |
| **UNITED PARCEL SERVICE, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## DEFENDANT UNITED PARCEL SERVICE, INC.'S
## REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

/s/ John V. Jansonius
John V. Jansonius
State Bar No. 10571900
jjansonius@akingump.com
Joshua Flynt
State Bar No. 24053204
jflynt@akingump.com
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201-4618
Telephone:  214-969-2800
Facsimile:  214-969-4343

**COUNSEL FOR DEFENDANT
UNITED PARCEL SERVICE, INC.**

DATED:  November 19, 2010

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................1

II.     ARGUMENTS AND AUTHORITIES .............................................................2

        A.      Most of Plaintiff's Claims Have Been Abandoned By Silence In His Response ....2

        B.      Plaintiff Has Presented No Evidence That He Experienced A Racially Hostile
                Work Environment..................................................................................................4

                1.      Plaintiff's Hostile Work Environment Claim is Procedurally Barred..........4

                2.      There Is No Evidence To Support A Finding That Howard
                        Experienced Severe Or Pervasive Racial Harassment..................................4

                3.      Plaintiff's Response Misrepresents Testimony And Relies On
                        Conclusory Declarations That As A Matter Of Law Are Immaterial...........7

                4.      Howard's Hostile Work Environment Argument Rests On A
                        Perverse Presumption That Caucasian's Are Generally Biased....................9

        C.      UPS Articulated Legitimate, Non-Discriminatory Reasons For Removing
                Howard From His Position As Feeder Division Manager And There
                Is No Evidence To Support A Finding That UPS's Reasons
                Are A Pretext For Discrimination .........................................................................10

                1.      Plaintiff Failed To Plead A Claim For Discriminatory Demotion..............10

                2.      Plaintiff Has Not Established A *Prima Facie* Case ...................................11

                3.      The Same Actor Presumption Is Unrebutted ............................................12

                4.      Plaintiff Has Presented No Evidence Of Pretext .......................................13

        D.      There Is No Evidence That UPS Retaliated Against Plaintiff ...............................16

                1.      Plaintiff Has No Claim For Alleged Retaliatory Demotion.......................17

                2.      Howard Did Not Engage In Activity Protected Under Section 1981
                        Before His Demotion And There Is No Evidence To The Contrary ..........18

                3.      Plaintiff Concedes UPS's Post-Complaint Conduct
                        Is Not Retaliatory.....................................................................................23

       E.     Plaintiff Has Presented No Evidence Of Lost Wages Or Lost Benefits, And He Continues Getting Pay Raises ................................................................23

III.    CONCLUSION.................................................................................................................24

# TABLE OF AUTHORITIES

*Abner v. Kansas City S. R.R. Co.,*
    513 F. 3d 154 (5th Cir. 2008) ........................................................................8, 9

*Bouie v. Equistar Chemicals, LP,*
    188 Fed. Appx. 233 (5th Cir. 2006)................................................................11

*Cassey v. Coca-Cola Enters.,*
    No. CIVA 05-0152, 2006 WL 3862005 (W.D. La. Dec. 29, 2006) ...................6

*Celestine v. Petroleous de Venezuela, S.A.,*
    266 F. 3d 343 (5th Cir. 2001) ..........................................................................5

*Denson v. Meadwestvaco Corp.,*
    No. Civ. A. 3:04-CV-337-M, 2005 WL 2179116 (N.D. Tex. Sept. 8, 2004)....16

*Faragher v. City of Boca Raton,*
    524 U.S. 775 (1998)........................................................................................10

*Frito-Lay v. Willoughby,*
    863 F. 2d 1029 (D.C. Cir. 1988) .....................................................................14

*Greenberg v. Crossroads Sys., Inc.,*
    364 F. 3d 657(5th Cir. 2004) ................................................................5, 19, 24

*Harris-Childs v. Medco Health Solutions, Inc.,*
    169 Fed. Appx. 913 (5th Cir. 2006).................................................................10

*Jackson v. Geo Group, Inc.,*
    312 Fed. Appx. 229 (11th Cir. 2009)...............................................................19

*Jeffrey v. Dallas County Med. Exam'r,*
    37 F. Supp. 2d 525 (N.D. Tex. 1999) ..............................................................10

*Johnson v. TCB Const. Co., Inc.,*
    334 Fed. Appx. 666 (5th Cir. 2009)...................................................................7

*Malacara v. Garber,*
    353 F. 3d 393 (5th Cir. 2003) .........................................................................14

*Mayberry v. Vought Aircraft Co.,*
    55 F. 3d 1086 (5th Cir. 1995) .........................................................................16

*McCray v. DPC Indus., Inc.,*
    942 F. Supp. 288 (E.D. Tex. 1996)....................................................................6

*Okoye v. Univ. of Tex. Houston Health Sci. Ctr.,*
    245 F.3d 514 (5th Cir. 2001) ............................................................12

*Oncale v. Sundowner Offshore Servs., Inc.,*
    523 U.S. 75 (1998).........................................................................4

*Owens v. Fed. Express Corp.*
    No. Civ. A. 3:04-CV-0346-P, 2005 WL 323720 (N. D. Tex. Feb. 9, 2005) ...........5, 19, 24

*Padilla v. Carrier Air Conditioning,*
    67 F. Supp. 2d 650 (E.D. Tex. 1999)...............................................10

*Phillips v. Credit Lyonnais,*
    No. Civ. A. 3:00-CV-1638-G, 2002 WL 1575412 (N.D. Tex. July 16, 2002)..................16

*Pickens v. Shell Tech. Ventures, Inc.,*
    118 Fed. Appx. 842 (5th Cir. 2004).................................................6

*Pineda v. United Parcel Serv.,*
    360 F. 3d 483 (5th Cir. 2004) .......................................................16

*Ragas v. Tenn. Gas Pipeline Co.,*
    136 F. 3d 455 (5th Cir. 1998) .......................................................14

*Rosenblatt v. 7-Eleven, Inc.,*
    No. 3:06-CV-0957-D, 2007 WL 2187252 (N.D. Tex. July 27, 2007)..............................15

*Skotak v. Tenneco Resins, Inc.,*
    953 F.2d 909 (5th Cir. 1992) ........................................................14

*Smith v. Harvey,*
    265 Fed. Appx. 197 (5th Cir. 2008)..................................................9

*Stanley v. Univ. of Tex. Med. Branch, Galveston,*
    425 F. Supp. 2d 816 (S.D. Tex. 2003)..............................................6

*Strong v. Univ. Healthcare Sys., L.L.C.,*
    482 F.3d 802 (5th Cir. 2007) ................................................11, 14, 22

*Sweet v. Dallas Indep. Sch. Dist.,*
    No. 3:02-CV-0406-P, 2004 WL 86308 (N.D. Tex. Jan. 15, 2004) ........................5, 19, 24

*United States v. Dunkel,*
    927 F. 2d 955 (7th Cir. 1991) ......................................................14

iv

*Waggoner v. City of Garland,*
987 F. 2d 1160 (5th Cir. 1993) .........................................................................................16

## Statutes

42 U.S.C. § 1981...................................................................................................... *passim*

Defendant files this Reply to Plaintiff's Response To Brief In Support Of Defendant United Parcel Service, Inc.'s Motion For Summary Judgment ("Response"), and would show the Court that there remains no genuine, material issue of fact for a trial in this case.

## I.
## INTRODUCTION

Plaintiff's Response abandons most of the claims asserted in his Complaint, fails to address most of the grounds for summary judgment set forth in Defendant's Motion, and does not identify any admissible evidence from which findings could be made that any adverse action has been taken against him because of his race or because he engaged in protected activity under federal civil rights law. Plaintiff's Response supports no conclusion other than he is an unhappy employee who wants the Court to second guess management decisions at UPS for his benefit. This is an appropriate case for summary judgment and Plaintiff's Response drives that point home decisively.

Plaintiff's Response is replete with contradictory, conclusory, and inadmissible allegations of non-material facts. The rendition of facts in Plaintiff's Response is arranged non-chronologically and in many instances with no dates or locations. This bespeaks either of indolence or an attempt to create confusion. Adding to his apparent desire for confusion, Plaintiff misleadingly cites depositions and exhibits and repeatedly controverts his sworn deposition testimony.[1] In short, Plaintiff has presented no admissible evidence to support his claims and they must therefore be dismissed as a matter of law.

---

[1] UPS challenges the authenticity and admissibility of certain evidence and exhibits offered by Plaintiff in his Response. Because the sheer number of incompetent, contradictory, conclusory, and inadmissible statements contained in Plaintiff's Response are too numerous to address in this Reply, these matters are addressed more fully in Defendant's Objections To Plaintiff's Summary Judgment Evidence ("Objections"), filed concurrently herewith. (Dkt. No. 84.)

## II.
## ARGUMENTS AND AUTHORITIES

Defendant's Motion and Brief in Support listed several separate grounds for summary judgment. (Mot. at 2-4, Dkt. No. 51; Br. at 5-7, Dkt. No. 52.) Defendant's grounds for summary judgment were set out with reference to the specific claims stated in Plaintiff's Complaint as well as unpleaded claims Plaintiff appeared to be raising in discovery. In large measure, Plaintiff's Response neglects these specific grounds warranting summary judgment, or simply makes passing mention of them without addressing any facts or legal authority. As to the grounds for summary judgment that are addressed in Plaintiff's Response, Howard has fallen woefully short of his burden to produce admissible evidence of specific facts from which findings could be made that he experienced a racially hostile work environment or was demoted in violation of 42 U.S.C. § 1981.

**A.      Most Of Plaintiff's Claims Have Been Abandoned By Silence In His Response.**

Pleadings matter. A plaintiff's complaint is supposed to articulate the claims in dispute, frame the appropriate subjects of discovery, and identify causes of action to be resolved by the parties or by the Court. Plaintiff's Response takes an entirely different tact.

In Howard's and his counsel's view, Plaintiff's Complaint is extraneous. His Response ignores the claims actually pleaded, argues claims that were not pleaded, and largely ignores the multiple grounds for summary judgment specifically articulated by UPS in its Motion. (*See* Resp. *passim*.) All of the following claims, much ballyhooed in the Complaint, have been dropped: (1) all pattern and practice claims of discrimination; (2) all claims concerning failure to promote and give pay raises; and (3) all claims concerning alleged retaliation and failure to restore Howard to a Grade 18 position following his first complaint of race discrimination in June 2008. (*Compare* Compl. *passim with* Resp. *passim*.)

2

As to grounds for summary judgment that Plaintiff elected not to address at all in his Response, the following chart is illustrative:

| Howard's Job Advancement Claim | | Plaintiff's Response |
|---|---|---|
| 1. | Limitations bar | None, except to deny his own pleading[2] |
| 2. | Failure to identify specific position | None |
| 3. | Admission against interest | None |
| 4. | Pattern and practice model inapplicable | None |

| Unequal Working Conditions Claim | | Plaintiff's Response |
|---|---|---|
| 1. | Too vague – not pleaded adequately | None |
| 2. | Pre- 08/26/07 limitations bar | None |

| Discriminatory Demotion Claim | | Plaintiff's Response |
|---|---|---|
| 1. | Same Actor Presumption | None |

| Retaliation Claim | | Plaintiff's Response |
|---|---|---|
| 1. | No evidence of any adverse action following his complaint of race discrimination in June 2008 | None |

| No Damages | | Plaintiff's Response |
|---|---|---|
| 1. | No evidence of lost income or benefits | None, except for a cursory statement that he did not get stock options or a relocation increase without evidence that he earned or was entitled to either benefit |
| 2. | No evidence that Howard's pay and benefits are different than any similarly situated UPS employee | None |

---

[2] Oddly, Plaintiff's job advancement claim is only mentioned in a footnote where he denies seeking recovery for an allegedly "belated" promotion expressly asserted in his Complaint. (Compl. ¶7B, Dkt. No. 1; Resp. at 36 n.9.)

In short, Plaintiff's Response abandons most of the claims asserted in his Complaint. As to the remaining claims, the Response leaves numerous remaining grounds warranting summary judgment unanswered.

**B.      Plaintiff Has Presented No Evidence That He Experienced A Racially Hostile Work Environment.**

Plaintiff's hostile work environment claim fails due to lack of evidence, due to limitations, and due to failure to state a claim for which relief can be granted.

**1.      Plaintiff's Hostile Work Environment Claim Is Procedurally Barred.**

In its Motion, UPS established that the allegation of "unequal working conditions" in Plaintiff's Complaint is too vague to state a claim for which relief can be granted. (Mot. at 36.) Plaintiff did not respond. (Resp. *passim.*) Defendant further established that all but one of the comments he alleges fell outside the limitations period. (Mot. at 38 n.11.) Again, Plaintiff did not dispute these facts or supporting authority. (Resp. *passim.*) As a result, summary judgment is warranted on his hostile work environment claim.

**2.      There Is No Evidence To Support A Finding That Howard Experienced Severe Or Pervasive Racial Harassment.**

Even if the Court construes "unequal working conditions" as a racially hostile work environment cause of action, Plaintiff has presented no evidence that he experienced a workplace permeated with racially discriminatory intimidation, ridicule, and insult. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (plaintiff must provide evidence that the workplace was "permeated with discriminatory intimidation, ridicule, and insult . . . sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment"). Indeed, at deposition, Howard testified that other than the alleged "Texas boy"

comment, he did not hear or see anything in Red River that he considered racially offensive.[3] (Mot. Ex. 12, Howard Dep. at 186-87, 193, Mot. App. at 352, Pl.'s App. at 195.)

As set forth in Defendant's Motion, to establish a claim for hostile work environment a plaintiff must present evidence that: (1) he personally was subjected to unwelcome harassment; (2) the harassment was based on race; (3) the harassment was so severe or pervasive as to adversely affect his terms and conditions of employment; and (4) the employer is culpable for the harassment. (Mot. at 36-37.) Broad characterizations about working conditions at UPS, harassment directed at co-workers, and generalizations about alleged isolated events over a long period of time are all insufficient to prove existence of a racially hostile work environment. *See Celestine v. Petroleous de Venezuela, S.A.*, 266 F.3d 343, 353 (5th Cir. 2001). Plaintiff's Response demonstrates that Howard cannot present evidence to support a finding that he experienced a racially hostile work environment.

First, the two incidents of alleged racial comments argued by Howard do not come remotely close to showing severe or pervasive racial harassment. The alleged "Texas boy" comment is ambiguous at best, and even as described by Howard, it has a clear geographical connotation about him being from Texas. The other allegedly offensive (and newly "remembered") remark about the highway patrolman pulling over Mr. Doole's car, even if taken together with the alleged "Texas boy" comment and credited exactly as Plaintiff contends, does

---

[3] In his declaration and statement of facts, Plaintiff invents a new allegation that Ms. Koeper allegedly said police would not have pulled over their car on a road trip had Howard not been in it. As now recalled by Howard, he considered this comment racially offensive. (Resp. at 11.) This directly contradicts Plaintiff's deposition testimony that he did not consider anything said in Red River, other than the alleged "Texas boy" comment, racially offensive. (Mot. Ex. 12, Howard Dep. at 186-87, Mot. App. at 352.) As such, this contradictory allegation should be disregarded. *See Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657, 670 (5th Cir. 2004); *Owens v. Fed. Express Corp.*, No. Civ. A. 3:04-CV-0346-P, 2005 WL 323720, at *1 n.3 (N.D. Tex. Feb. 9, 2005); *Sweet v. Dallas Indep. Sch. Dist.*, No. 3:02-CV-0406-P, 2004 WL 86308, at *5 (N.D. Tex. Jan. 15, 2004). Nevertheless, even if the Court considers this incident exactly as Plaintiff alleges, it is still not nearly severe or pervasive enough to show a workplace permeated with discriminatory harassment.

not come remotely close to showing severe or pervasive racial harassment.  In cases involving far more egregious allegations than this, courts in the Fifth Circuit have routinely granted summary judgment to the employer. *See, e.g., Pickens v. Shell Tech. Ventures, Inc.*, 118 Fed. Appx. 842, 850 (5th Cir. 2004); *Cassey v. Coca-Cola Enters.*, No. CIVA 05-0152, 2006 WL 3862005, at **7-8 (W.D. La. Dec. 29, 2006); *Stanley v. Univ. of Tex. Med. Branch, Galveston*, 425 F. Supp. 2d 816, 824 (S.D. Tex. 2003); *McCray v. DPC Indus., Inc.*, 942 F. Supp. 288 (E.D. Tex. 1996).

Second, Howard has not shown that his terms and conditions of employment were altered by any alleged harassment.  Much to the contrary, Howard maintains that he was able to effectively perform his job at all times and that he performed better than his colleagues in Red River.  (Resp. at 11-27.)  Unlike in the typical hostile work environment case in which the plaintiff is claiming constructive discharge, Howard admits in this case that any alleged harassment he experienced was not even enough to make him think about leaving UPS.[4]

Howard's hostile work environment claim is a throwaway.  Nothing in Plaintiff's Response justifies such a claim.  For each of the reasons discussed above, and in Defendant's Motion, Plaintiff's racial harassment claim must, as a matter of law, be dismissed.

---

[4] Despite claiming that his working conditions were unbearable, Howard has not looked for or apparently even considered looking for another job.  As he testified:

    Q.    …. Are you looking for employment at any companies other than UPS presently?
    A.    No, sir.
                * * *
    Q.    Have you filed an application for employment at any companies within the last ten years?
    A.    No, sir.
                * * *
    Q.    Have you done anything in the last five years to determine whether there would be an opportunity for you to make more money at any other company than you make at UPS?
    A.    No, sir.

(Mot. Ex. 12, Howard Dep. at 64-65, Mot. App. at 329-30.)

**3.     Plaintiff's Response Misrepresents Testimony And Relies On Conclusory Declarations That As A Matter Of Law Are Immaterial.**

To begin, Plaintiff relies on the perceptions of others to try and establish his claim. (Resp. at 38-41.) Feeder Supervisor Leonard Hudson may believe that he was subjected to a hostile work environment, but that is not evidence that Plaintiff was racially harassed.[5] (Resp. at 32, 39.) Moreover, a single, offhand speculation by a union driver that relationship problems Howard had with subordinates may have had something to do with race is not evidence that Howard was subjected to race harassment by Ms. Koeper. (Resp. at 30-31, 39.) Subjective speculation and opinions about why subordinates and other employees criticized his management of the Feeder Department are not evidence of a racially hostile work environment by any stretch of imagination or law.

Plaintiff also repeatedly mischaracterizes the factual record. He argues that Mr. Grover never mentioned the book *Happy to be Nappy* while explaining how phrases can take on various meanings depending on the context. (Resp. at 28.) Yet, the very document authored by Plaintiff and relied on in his declaration to support this contention states: "in return you mentioned the book 'Happy to be Nappy' was inappropriate [sic]." (Pl.'s Ex. 2, Pl.'s Decl. ¶ 16, Pl.'s App. at 264, 268.)

Plaintiff also misrepresents that Ms. Koeper and Mr. Hannigan testified in deposition that they do not believe calling African-American men "boy" or "nigger" is racist or discriminatory. (Resp. at 39.) To the contrary, Ms. Koeper stated at deposition that she does not use that kind of

---

[5] In support of his argument, Plaintiff cited a declaration by an employee stationed in Abilene, Texas, (Leonard Hudson) who says that he frequently heard the word "boy" used at UPS. (Resp. at 32, 39.) That declaration is neither admissible nor material. There is no evidence that Howard (stationed in Oklahoma City, Oklahoma) had a similar experience. Howard's deposition testimony is directly to the contrary. Other than the alleged "Texas boy" comment, he did not hear anything else in Red River that he considered racially offensive. (Mot. Ex. 12, Howard Dep. at 186-87, Mot. App. at 352.) A hostile work environment claim must rest on the *plaintiff's experience*, not on another employee's alleged experience. *See Johnson v. TCB Const. Co.*, 334 Fed. Appx. 666, 671 (5th Cir. 2009).

language, she considers it unprofessional, and she would call Human Resources if she overheard someone using it at work.   (Mot. Ex. 9, Koeper Dep. at 118-21, Mot. App. at 241-42.) Ms. Koeper added, when pressed by Plaintiff's counsel, that whether *the person hearing it* considered it offensive or racist would depend on the context and require her to speculate.   (*Id.*) Equally misleading is Plaintiff's allegation that Mr. Hannigan does not find these terms offensive. He was *not even asked* these questions at his deposition. (Mot. Ex. 7, Hannigan Dep. *passim*, Mot. App. at 129-69.)    Plaintiff's deceitful mischaracterizations should not be countenanced.

In support of his misguided theory that any use of the words "Texas boy" preclude summary judgment, Plaintiff ignores his own testimony and the overwhelming case law cited by Defendant. (Mot. at 37-40.)  First, Plaintiff ignores his actual testimony and his struggle in deposition to remember what Ms. Koeper actually said.   As best he could recall, she said something to the effect of: "You boys from Texas" or "You Texas boys, you come to my district and think you are going to do things your way. We do things here a certain way."  (Mot. Ex. 12, Howard Dep. at 190-92, Mot. App. at 353.)  That was allegedly in a meeting regarding Howard's multiple changes to operations practices in Oklahoma City immediately after transferring from the North Texas District.  (*Id.*)

Next, as to case law, Plaintiff completely ignores numerous Fifth Circuit cases cited in Defendant's Motion showing that conduct substantially more offensive than what he alleges is not enough to create a fact issue on hostile work environment. (Mot. at 39-40.)  Instead, he cites a single opinion light years removed from the facts of this case. (Resp. at 39-40.)  That case is *Abner v. Kansas City Southern Railroad Co.*, 513 F.3d 154, 164-65 (5th Cir. 2008).  In *Abner*, the Fifth Circuit upheld a jury verdict that eight African-American plaintiffs were subjected to a

hostile work environment over the course of ten years because: (1) they were often called "n----" and "boy" by multiple supervisors; (2) the plaintiffs received threats of physical violence; (3) one of the supervisors had a prior criminal conviction for crimes related to the Ku Klux Klan; (4) a noose was hung from the ceiling; (5) "KKK" and "n-----" were repeatedly spray painted on walls and equipment; (6) plaintiffs made multiple and repeated complaints that were "laughed at"; and (7) the company did not propagate and maintain a meaningful policy against racial harassment. Plaintiff has made no such allegations in this case (because none exist).

*Abner* illustrates the extreme facts that must exist to prove a hostile work environment claim. Plaintiff's deposition testimony and his largely successful career at UPS as he describes in his Response affirmatively prove that he has not experienced a racially hostile work environment.

### 4.    Howard's Hostile Work Environment Argument Rests On A Perverse Presumption That Caucasian's Are Generally Biased.

Throughout Plaintiff's Response, Howard chooses to recount workplace disputes he had with Caucasian co-workers as race-based harassment without any evidence that his co-workers were biased or prejudiced.[6]  (Resp. *passim.*)  For example, he alleges that the UPS corporate concern investigation was not "fair" because "[t]he majority of write-ups were all from Caucasian Managers and Caucasian Supervisors that African American Plaintiff [had work-related problems with]." (Resp. at 26-27.) Howard's willingness to describe workplace events as racially motivated without any evidence that his co-workers harbor a racial animus is untenable and offensive. That a dispute over work-related issues occurs between employees of different races is not evidence of a racially hostile work environment. *See Smith v. Harvey*, 265

---

[6] Many of the issues Plaintiff complains about here are also addressed as alleged retaliation *infra* Section II.D.2.

Fed. Appx. 197, 202 (5th Cir. 2008) (the plaintiff had no evidence that the incidents and comments in question were race-based other than his own subjective opinion); *Harris-Childs v. Medco Health Solutions, Inc.*, 169 Fed. Appx. 913, 917 (5th Cir. 2006) (affirming lower court because the plaintiff failed to show that any of the alleged harassing events were based on her race or had a racial character or purpose).

Section 1981 is not a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *see also Padilla v. Carrier Air Conditioning*, 67 F. Supp. 2d 650, 661 (E.D. Tex. 1999). Plaintiff's complaints about general rudeness and uncivil behavior, even if they were true, are insufficient to establish a claim under section 1981. *See Jeffrey v. Dallas County Med. Exam'r*, 37 F. Supp. 2d 525, 531 (N.D. Tex. 1999). Plaintiff has not satisfied his burden to prove actionable hostile work environment harassment, and Plaintiff's Response corroborates that Howard has no basis in law or fact to claim that he has experienced severe or pervasive harassment at UPS because of his race.

**C.    UPS Articulated Legitimate, Non-Discriminatory Reasons For Removing Howard From His Position As Feeder Division Manager And There Is No Evidence To Support A Finding That UPS's Reasons Are A Pretext For Discrimination.**

Plaintiff's putative demotion claim fails because it was never pleaded. (Mot. at 40.) Even assuming that reference to demotion in the statement of facts in Plaintiff's Complaint suffices to plead a cause of action for unlawful demotion, however, there is no evidence to support a finding that Howard was lowered from Grade 18 to Grade 16 in February 2008 because he is Black.

**1.    Plaintiff Failed To Plead A Claim For Discriminatory Demotion.**

Defendant's Motion established that Plaintiff's Complaint does not assert discriminatory demotion as a claim for relief. Plaintiff's reference to his demotion was background information relating to his specifically pleaded claim of retaliatory non-promotion (which he has since

10

abandoned). (Mot. at 40; *see supra* Section II.A.) That is the only reasonable conclusion that can be drawn from a reading of Plaintiff's Complaint in its entirety.

With respect to UPS's to failure to plead argument, Plaintiff's Response says no more than that he "did in fact claim his demotion was unlawful." (Resp. at 36.) When one looks to the Complaint paragraphs cited in support of Plaintiff's argument, however, it is clear that Howard did *not* plead a demotion claim.[7] (*Id.*) Plaintiff's Complaint is specifically drafted as a pattern and practice challenge to job advancement and failure to return him to a Grade 18 position. Howard should not now be allowed to re-define his claims at will.

## 2. Plaintiff Has Not Established A *Prima Facie* Case.

UPS's Motion established that Plaintiff could not identify any similarly situated employees who were treated more favorably than Howard under nearly identical circumstances. (Mot. at 41-43.) Plaintiff's Response confirms that Plaintiff still has not identified a division level manager whose denials of knowledge about events in his department raised significant concerns over integrity, as was the case with Howard.[8] (Resp. *passim.*) Without such evidence, Plaintiff cannot establish the causation element of a *prima facie* case. *See Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 806-07 (5th Cir. 2007); *Bouie v. Equistar Chemicals, LP*,

---

[7] Paragraph 7.W. only sets out alleged facts relating to the circumstances surrounding his demotion—it says nothing about discrimination and does not even attempt to state a claim. Paragraph 7.KK. alleges that "UPS *failed and refused to promote* [Plaintiff]" and "UPS *denied Plaintiff scores of [other] division manager positions* for which he was qualified" (emphasis added). Paragraph 12 states that alleged "discrimination and retaliation denied [Plaintiff] the *opportunity to regain* his division manager level position and to *advance to upper management levels*" (emphasis added). On their face, these allegations clearly state a failure to promote claim, not a demotion claim.

[8] The only potential comparator discussed in Plaintiff's Response is former North Texas Hub Division Manager Mike Bednar. (Resp. at 9-10.) Howard complains that Mr. Bednar used inappropriate, threatening language in the workplace and speculates that he was not disciplined. (*Id.*) This is an erroneous comparison. First, as Plaintiff well knows, Mr. Bednar was disciplined. (Mot. Ex. 1, Bednar Dep. at 109-11, Mot. App. at 28; Mot. Ex. 2, Bednar Decl. ¶¶ 11-14, Mot. App. at 41-42.) Next, Mr. Bednar's use of foul language is in no way similar to Plaintiff's failure to adequately perform and integrity problems. Finally, and most importantly, Mr. Bednar immediately admitted his conduct at the time and apologized to those involved. (*Id.*) There was no integrity issue with Mr. Bednar.

188 Fed. Appx. 233, 236-37 (5th Cir. 2006); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001). Plaintiff does not rebut this contention. (Resp. at 36-38.)

Instead of presenting evidence of disparate treatment, Plaintiff attempts to set up a *prima facie* case by arguing that he was replaced as Feeder Division Manager by Gary Barnett, who is Native American. (Resp. at 36.) As Plaintiff correctly testified at deposition, however, he was not replaced. (Mot. Ex. 12, Howard Dep. at 353-54, Mot. App. at 382.) After he was demoted, Plaintiff's responsibilities were consolidated with Mr. Barnett's duties who continued performing all his other responsibilities as Hub Division Manager. (*Id*; Mot. Ex. 10, Koeper Decl. ¶ 45, Mot. App. at 268.) That fact is uncontroverted.[9] Given that Plaintiff has presented no evidence showing he was treated less favorably under nearly identical circumstances than a similarly situated non-Black employee, and because he was not replaced, he has failed to establish a *prima facie* case.

### 3. The Same Actor Presumption Is Unrebutted.

A good reason for Howard not to plead discriminatory demotion is that the claim is untenable. UPS established in its Motion that the same actor presumption applies in this case. The evidence was clear all along and remains uncontroverted that the same three people involved in the decision to promote Plaintiff in June 2007 were involved in the decision to demote him eight months later. (Mot. at 40-41.)

---

[9] Howard cites to the Declaration of David Schley in support of his contention that he "was better qualified for Feeder Division Manager position [sic] than Gary Barnett who replaced him when he was demoted." (Resp. at 32.) Mr. Schley cannot possibly have personal knowledge of these alleged "facts" because he was assigned to a different UPS district in a different state with no supervisory authority over Howard throughout Howard's time in the Red River District. (*See* Objections at Section S; Dkt. No. 84.) Moreover, Mr. Schley's observation that Howard was qualified for Feeder Division Manager in June 2007 is completely immaterial since Howard was promoted to that position and that promotion opportunity is not at issue in this case.

UPS further established that both decisions were made collectively, not by one person, and that is further support for the applicable presumption that UPS's decision to demote was not retaliatory. (Mot. at 41.) Plaintiff did not respond to these facts, nor to the case authority establishing the presumption against him. (Resp. *passim*.) Nor did Plaintiff's Response make any attempt to rebut the same actor presumption's heightened standard. (*Id.*) The same actor presumption against wrongful intent clearly applies and there is no evidence rebutting that the UPS managers who promoted Plaintiff to Grade 18 were biased on account of race when they demoted him eight months later.

### 4. Plaintiff Has Presented No Evidence Of Pretext.

Defendant's Motion sets out specific business reasons for demoting Howard back to Grade 16. (Mot. at 43-45.) Plaintiff's managers lost confidence in Howard because they believed he was performing his job inadequately and he demonstrated a lack of integrity necessary for high-level management responsibility. (Mot. Ex. 10, Koeper Decl. ¶ 44, Mot. App. at 268.) Plaintiff attempts to show pretext by blaming others for his department's problems and arguing that he was the only manager in Red River doing his job. (Resp. *passim*.) Plaintiff's self-appraisal is immaterial.

There is no evidence that Ms. Koeper's, Mr. Hannigan's, and Mr. Sardella's reasons for demoting Howard were a pretextual mask for discrimination. (Mot. at 43-45.) Plaintiff first argues that UPS's reasons for his demotion are inconsistent. (Resp. at 37.) Plaintiff's argument confuses specific incidents with an ultimate conclusion: Howard was not demoted because of

13

any single problem, he was demoted because a series of problems led to a loss of confidence in his management of the Feeder Division.[10]

To make his argument, Plaintiff breaks out the varying components of the investigation conducted by Ms. Lehmann and Mr. Pritt and contends that each one was a separate and different reason for his termination. (Resp. at 37-38.) This is misleading at best. As UPS has consistently stated, Plaintiff was demoted because his supervisors had lost confidence in him due to the lack of integrity revealed in the corporate investigation and the accumulation of performance-related issues throughout his time in Red River.[11] (Mot. Ex. 10, Koeper Decl. ¶ 44, Mot. App. at 268.) There is no evidence that UPS's reasons have changed, and there is no evidence that UPS made up a reason for demotion that it knew to be untrue. An accumulation of problems and evidence over time are not evidence of pretext, but rather are validation of an employer's reason for terminating or demoting an employee. *See Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 807 (5th Cir. 2007).

Next, Plaintiff argues that because he was not placed on a performance improvement plan, UPS's reasons for his termination must be pretextual. (Resp. at 38.) In fact, Mr. Doole and Mr. Sardella discussed a performance improvement plan for Howard. (Pl.'s Ex. 3, Doole Notes,

---

[10] Plaintiff also makes the uncited, unsupported statement that "Plaintiff's 120 Facts set out above are filled with the pretext of Defendant's reasons." (Resp. at 37.) Such unsupported assertions are insufficient to overcome summary judgment. As stated in *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003), "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *See also Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (same); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 916 n.7 (5th Cir. 1992) (same); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not pigs, hunting for truffles buried in briefs."); *Frito-Lay v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988) ("[Plaintiff's] failure to designate and reference triable facts was, in light of the language of Rule 56(c) and governing precedent, fatal to its opposition."); Local Rule 7.2(e) (requiring parties to "include citations to each page of the appendix that supports each assertion that the party makes").

[11] Plaintiff also argues that pretext exists because UPS did not take action on the United Way threats until January 2008. (Resp. at 37.) That was just one of several incidents that undermined Howard's credibility and demonstrated his inability to perform as a division level manager. It was not and never has been the sole reason for Howard's demotion.

14

Pl.'s App. at 27.)   The evidence is uncontroverted that consideration of a performance improvement plan for Howard occurred before the corporate concern about Howard was reported.   Obviously, that was also before the ensuing investigation by Ms. Lehmann and Mr. Pritt, which concluded that Howard had not lived up to UPS's integrity standards as a division manager.

Improvement plans are designed to correct work performance issues, not one's integrity. (Mot. Ex. 9, Koeper Dep. at 162-63, Mot. App. at 252.)   Howard was demoted back to mid-level manager rather than terminated because of his long career at UPS and because he had demonstrated competence in that position before.   Mr. Hannigan, Ms. Koeper, and Mr. Sardella hoped that the issues with Plaintiff would clear up if he was returned to a less demanding position that he was familiar with.   (Mot. Ex. 7, Hannigan Dep. at 141-42, Mot. App. at 164.) There is no evidence to the contrary.   Unfortunately, Howard's arguments that UPS's stated reason for demotion actually warrants termination falls squarely within the maxim that no good deed goes unpunished.

Plaintiff is left arguing that he did his job well and contesting UPS's business judgment that he did not.   That is not a basis for establishing pretext or discriminatory intent.   *See Rosenblatt v. 7-Eleven, Inc.*, No. 3:06-CV-0957-D, 2007 WL 2187252, at *7 (N.D. Tex. July 27, 2007) (employment discrimination and retaliation laws are not to turn the courts into personnel managers).   Plaintiff's burden is to come forward with specific evidence that UPS's decision-makers acted discriminatorily, and it is not enough to show that they were mistaken or relied on bad information.

With respect to Plaintiff's demotion, UPS's Motion established that Ms. Koeper, Mr. Hannigan, and Mr. Sardella acted on the findings of the corporate concern investigation.   (Mot.

15

at 40-41.)   Whether their decision may have rested on misinformation, as Plaintiff alleges, is immaterial. The fact that an employer's reasonable understanding or belief about facts resulting in demotion or termination ultimately is incorrect is immaterial to whether the employer created a pretext for discrimination. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("[t]he question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive"); *Waggoner v. City of Garland*, 987 F.2d 1160, 1166 (5th Cir. 1993) (evidence of the plaintiff's innocence is insufficient to show pretext; rather, the plaintiff must produce evidence that the decision maker "did not in good faith believe the allegations, but relied on them in a bad faith pretext to discriminate against him"); *Phillips v. Credit Lyonnais*, No. Civ. A. 3:00CV1638-G, 2002 WL 1575412, at *7 (N.D. Tex. July 16, 2002) ("To show pretext, a plaintiff must do more than negate the defendant's proffered reasons for the employment decision.")

Finally, Plaintiff's contention that the investigation by Ms. Lehmann and Mr. Pritt was flawed and incomplete, thus resulting in erroneous conclusions, is also insufficient. *See Denson v. Meadwestvaco Corp.*, No. Civ. A. 3:04-CV-337-M, 2005 WL 2179116, at *4 (N.D. Tex. Sept. 8, 2004) (citing *Pineda v. United Parcel Serv.*, 360 F.3d 483, 489 (5th Cir. 2004)). Plaintiff has failed to present any evidence that the decision to demote him was pretextual. There is also no evidence that Ms. Lehmann or Mr. Pritt were influenced by any improper motive. (Resp. *passim.*) Thus, Plaintiff's discrimination claim must be dismissed as a matter of law

## D.   There Is No Evidence That UPS Retaliated Against Plaintiff.

No claim was pleaded asserting retaliatory demotion.   On this subject, however, Plaintiff's Response is again premised on the fiction that pleadings are living documents that evolve to accommodate the plaintiff's preferences when the facts do not support his allegations.

16

That is not the law. Moreover, even if Howard had pleaded retaliatory demotion, the claim would be doomed to failure. There is not and cannot be a causal connection for actions taken prior to Plaintiff's engagement in protected activity. Additionally, there is no evidence that anyone at UPS acted with retaliatory animus. Finally, as to the claim Howard did plead, alleging retaliation *after* his letter to the management committee in June 2008, he has abandoned that claim by failing to address UPS's grounds for summary judgment in his Response. *See supra* Section II.A.

### 1. Plaintiff Has No Claim For Alleged Retaliatory Demotion.

In its Motion, UPS established that Plaintiff's Complaint only alleges retaliation for events post-February 2008. The recitation of claims in the Complaint only concerns allegedly "[denying] him the opportunity to regain his division manager level position and to advance to upper management levels." (Mot. at 45-46; Compl. ¶ 12, Dkt. No. 1.) That is consistent with Howard's deposition testimony in which Howard admitted that he never made a discrimination complaint until *after* his demotion. (Mot. Ex. 12, Howard Dep. at 358, Mot. App. at 383.) Except for Howard's recent, self-serving, unsupported statement that "[h]e did in fact claim his demotion was unlawful," Plaintiff did not respond to these arguments or authorities.[12] (Resp. at 36.) UPS is therefore entitled to summary judgment on Plaintiff's non-pleaded retaliatory demotion claim.

---

[12] The Complaint paragraphs cited by Plaintiff do not support his argument. Paragraph 7.W. only sets out alleged facts relating to the circumstances surrounding his demotion—it says nothing about retaliation and does not even attempt to state a claim. Paragraph 7.KK. alleges that after his demotion in February 2008, "UPS *failed and refused to promote* [Plaintiff]" and "UPS *denied Plaintiff scores of [other] division manager positions* for which he was qualified" (emphasis added). Paragraph 12 states that alleged "discrimination and retaliation denied [Plaintiff] the *opportunity to regain* his division manager level position and to *advance to upper management levels*" (emphasis added). On their face, these claims only concern alleged UPS conduct post-demotion.

**2.      Howard Did Not Engage In Activity Protected Under Section 1981 Before His Demotion And There Is No Evidence To The Contrary.**

Plaintiff's latent assertion of retaliatory demotion is specious. As demonstrated in UPS's Motion, Plaintiff admits he engaged in no protected activity before his demotion in February 2008. (Mot. Ex. 12, Howard Dep. at 358, Mot. App. at 383.) Thus, any action taken by UPS earlier than that cannot possibly be causally connected.

In an attempt to salvage a retaliation claim, Howard now asserts that he reported the alleged "Texas boy" comment *as* discrimination to Mr. Hannigan in a heretofore unmentioned telephone call in July 2007.[13] (Resp. at 10, 36.) That contradicts his deposition testimony on multiple counts. First, he specifically testified that he did not report the alleged "Texas boy" comment as discrimination until June 2008.[14] (Mot. Ex. 12, Howard Dep. at 192, 370-71, Mot. App. at 353, 385.)

---

[13] When Plaintiff met with Mr. Hannigan on September 28, 2007, they discussed a litany of issues Howard was having in the Feeder Department. (Mot. Ex. 12, Howard Dep. at 239-40, Mot. App. at 359; Mot. Ex. 7, Hannigan Dep. at 80-106, Mot. App. at 148-55; Mot. Ex. 8A, Email to N. Koeper from B. Hannigan dated Oct. 2, 2007, Mot. App. at 175-78.) During this meeting, Plaintiff mentioned in passing a meeting he had with Ms. Koeper where she had told him he was managing things improperly and allegedly said something to the effect of: "You boys from Texas" or "You Texas boys, you come to my district and think you're going to do things your way. We do things here a certain way." (Mot. Ex. 12, Howard Dep. at 190-92, Mot. App. at 353.) Plaintiff did not report the comment as racially offensive to anyone until June 2008—months after his demotion. (Mot. Ex. 12, Howard Dep. at 192, 358, 370-71, Mot. App. at 353, 383, 385.) Mr. Hannigan interpreted the comment described by Howard as it was presented: a reflection of the natural interstate and inter-district rivalry between Texas and Oklahoma and the Red River and North Texas Districts. (Mot. Ex. 7, Hannigan Dep. at 80-81, Mot. App. at 148-49; Mot. Ex. 8, Hannigan Decl. ¶ 12, Mot. App. at 171.) Despite Plaintiff's wild protestations, there is no evidence to the contrary.

[14]    Q:    Now, when she used those words, "Texas boy," what did you say to her?
    A:    I just sat there.
    Q:    Did you report it to anybody?
    A:    No.  I talked to Joe Doole, but I didn't tell him that.

* * *

    Q:    In the second paragraph [of the letter sent to the UPS management committee in June 2008], you refer to the "Texas boy" comment that we discussed earlier?
    A:    Yes, sir.
    Q:    Is this the first time you had reported that to anyone at UPS?
    A:    Yes, sir.
(Mot. Ex. 12, Howard Dep. at 192, 370-71, App. at 353, 385.)

Case 3:09-cv-02074-K   Document 83   Filed 11/19/10   Page 25 of 31   PageID 1298

Second, Howard testified that he never reported any other alleged acts of race discrimination until his June 2008 letter. (Mot. Ex. 12, Howard Dep. at 358, Mot. App. at 383.) Plaintiff's self-serving, contradictory declaration and arguments are unavailing. A fact issue cannot be created by contradicting one's own deposition testimony. *See Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657, 670 (5th Cir. 2004); *Owens v. Fed. Express Corp.*, No. Civ. A. 3:04-CV-0346-P, 2005 WL 323720, at *1 n.3 (N.D. Tex. Feb. 9, 2005); *Sweet v. Dallas Indep. Sch. Dist.*, No. 3:02-CV-0406-P, 2004 WL 86308, at *5 (N.D. Tex. Jan. 15, 2004).

Even if the Court accepts Plaintiff's argument about what he told Mr. Hannigan, his claim still fails. Plaintiff has presented no evidence that this alleged conversation with Mr. Hannigan was statutorily protected even if it happened exactly as he now states. First, nowhere in Plaintiff's Complaint, deposition, or declaration does he say that he reported the comment to Mr. Hannigan as race discrimination or racial harassment. (Compl. ¶ O, Dkt. No. 1; Mot. Ex. 12, Howard Dep. *passim*, Mot. App. at 327-99; Pl.'s Ex. 2, Howard Decl. ¶ 6, Pl.'s App. at 264.) The new characterization is purely an argument by counsel unsupported by evidence.

Second, nowhere does he say that the told Mr. Hannigan he was offended by the remark or that he wished to invoke remedial procedures. (*Id.*)

Third, there is also no evidence that Plaintiff had suffered or even claimed to suffer an adverse employment action at the time he allegedly spoke to Mr. Hannigan. As explained in *Jackson v. Geo Group, Inc.*, 312 Fed. Appx. 229 (11th Cir. 2009), to establish that one engaged in protected activity under section 1981, a plaintiff:

> ...must have held an objectively and a subjectively reasonable belief that he had been subjected to an adverse employment action and, as part of the same action, had been treated differently because of his race, thereby violating § 1981.

19

*Id.* at 234. Here, there is no evidence that Howard believed he had suffered any adverse action at UPS when he told Mr. Hannigan he had allegedly been called a "Texas boy," and there is no evidence that a reasonable person would have interpreted the comment as relayed to Mr. Hannigan as anything other than a reflection of interstate and inter-district rivalries between Texas and Oklahoma.[15]

Plaintiff also rearranges the undisputed factual timeline to make it appear as though he had no performance problems in Red River before allegedly calling Mr. Hannigan. Specifically, Howard now states that "[i]t is after Plaintiff reported to Mr. Hannigan. . . that Plaintiff's working conditions began to deteriorate." (Resp. at 39.) Plaintiff contends that: (1) he was admonished for berating a security guard shortly after he arrived in the District; (2) Mr. Cowan complained about having his office moved while on vacation; (3) his employees reported that they were being threatened and coerced into making United Way contributions; (4) unnamed employees were allegedly encouraged by Ms. Koeper to complain to her; and (5) he was not allowed to rent a car and commute to and from Tulsa on a daily basis. (Resp. at 40.) Plaintiff's arguments are contradicted by his sworn deposition testimony.

The incidents involving Mr. Cowan's unannounced office move,[16] berating the security guard,[17] and the United Way threats[18] all happened *before* Plaintiff contends he was called a

---

[15] Plaintiff makes much of the fact that Mr. Doole and Mr. Grover believed in hindsight that Mr. Hannigan probably should have told Human Resources about the "Texas boy" comment so it could be addressed with Howard and Ms. Koeper. (Resp. at 10-11.) However, Plaintiff neglects to point out that neither of these men believed the comment had any racial connotation and viewed it as a simple employee relations issue, which, incidentally, is also a Human Resources function. (Mot. Ex. 6, Grover Decl. ¶ 16, Mot. App. at 113.)

[16] Howard testified at deposition that it was a mistake for him to move Mr. Cowan's office while Mr. Cowan was on vacation. (Mot. Ex. 12, Howard Dep. at 332-33, Mot. App. 376-77.) That he now claims it was retaliation for Ms. Koeper to not support his admittedly "bad decision" is mystifying.

[17] In his Response, Plaintiff admits he "had words with" the security guard and told the guard he would "take care of him." (Resp. at 19-20.) As indicated by Ms. Koeper, the problem in this instance was more with Howard's unprofessional attitude and demeanor than where he parked. (Mot. Ex. 10, Koeper Decl. ¶ 16, Mot. App. at 264.)

"Texas boy" and before he allegedly "reported" it.  This is according to Howard's own testimony.  (Mot. Ex. 12, Howard Dep. at 187-91, 199-200, 211-12, 217-20, Mot. App. at 352-54, 356-57; Mot. Ex. 10, Koeper Decl. at ¶¶ 16-18, Mot. App. at 264; Mot. Ex. 10B, Commitment Letter from C. Howard dated Sept. 4, 2007, Mot. App. at 272.)  Completely undermining Plaintiff's attempt to twist the timeline is the uncontroverted fact that it was in a meeting with Ms. Koeper when some of these very incidents were being discussed that she supposedly said, "You Texas boys, you come to my district and think you're going to do things your way.  We do things here a certain way."  (Mot. Ex. 12, Howard Dep. at 190-92, Mot. App. at 353.)

The incidents discussed in Plaintiff's Response do not support a retaliation claim.  Howard was clearly having problems in Red River from the outset.  The problems continued throughout his time in Red River, and this sequence is confirmed by Howard's deposition testimony.  Plaintiff's Response is not the time or place to retract and alter his deposition testimony.

As to Howard's disapproval of complaints about him by co-workers and subordinates, there is no evidence that the complaints about Plaintiff to Ms. Koeper or her desire to remain informed about a department in her district were retaliatory.  District managers are entitled to hear from employees about concerns they have regarding division level managers.[19]  Indeed, Employees are encouraged by UPS policy to report objectionable conduct.  (Mot. Ex. 4, Doole

---

[18] Plaintiff's Response admits the threats were verified by Mr. Grover's investigation.  (Resp. at 22.)

[19] District managers are also entitled to have a Human Resources representative present in meetings when necessary, and often do.  Plaintiff's Response mischaracterizes Mr. Doole's testimony on this subject.  (Resp. at 10.)  Mr. Doole testified that he regularly attended meetings between Ms. Koeper and individual division managers—some more than others.  (Mot. Ex. 3, Doole Dep. at 30-31, Mot. App. at 52.)  The fact that Ms. Koeper only met with Mr. Howard if Mr. Doole was present after she lost trust in him being able to accurately recount what happened in meetings is also no evidence of discrimination.  (Mot. Ex. 10, Koeper Decl. ¶ 27, Mot. App. at 265-66.)

Decl. ¶¶ 5, 6, Mot. App. at 70-71; Mot. Ex. 4A, UPS Professional Conduct & Anti-Harassment Policy, Mot. App. at 75.)

Employees began reporting concerns about Howard to Ms. Koeper from the beginning of his assignment in Red River.[20]   (Mot. Ex. 10, Koeper Decl. at ¶¶ 16-18, 22-23, Mot. App. at 264.) There is no evidence that the complaining employees had any knowledge that Howard had allegedly reported or even suspected that he was being discriminated against. In fact, there is no evidence that any employee who complained about Howard had an ulterior purpose.

Finally, Plaintiff alleges that after his reassignment in February 2008, it was retaliatory to deny him a rental car and to commute to Tulsa daily.[21]   (Resp. at 41.) There is no evidence, however, that Hub Division Manager Gary Barnett, who made this decision, was even aware of any alleged protected activity by Howard. Nor has Plaintiff argued that Mr. Barnett had any knowledge of any alleged protected activity.

There is also no evidence that Plaintiff was similarly situated to the two employees he cites as comparators—Chris Blessington and Tyler Trent.  (Resp. at 31, 41.) To be similarly situated, Plaintiff must show that their circumstances were "nearly identical" to his own. *See Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 806-07 (5th Cir. 2007). That is not the case here.

Mr. Blessington was simultaneously assigned to both the Tulsa and Oklahoma City hubs, which necessitated him commuting to fulfill his UPS duties. (Mot. Ex. 9, Koeper Dep. at 175-

---

[20] It is in this context that Mr. Doole said Howard had become a "target." (Resp. at 39.) Mr. Doole told Howard that his failure to properly communicate and manage the Feeder Department was making him a target for complaints and rumors. (Pl.'s Ex. 2/Doole, Annotated Ltr. to UPS Mgmt. Cmte., Pl.'s App. at 66.) Mr. Doole's comment had nothing to do with race and there is no allegation or evidence to the contrary. Yet again, Plaintiff takes an isolated comment out of context and twists it to fit his misguided theories.

77, Mot. App. at 255-56.) Mr. Trent was allowed to commute because his wife was suffering from depression following a recent miscarriage and the death of her grandfather. (Mot. Ex. 11, Declaration of Tyler Trent ("Trent Decl.") ¶ 4, Mot. App. at 325.) UPS accommodated his request to help care for his wife and children. (Mot. Ex. 11, Trent Decl. ¶ 5, Mot. App. at 325.) Unlike Mr. Blessington, Howard was assigned only to the Tulsa hub. Unlike Mr. Trent, Howard had no extenuating medical circumstances in his family.

In short, the only fact issues regarding retaliation are between Howard's multiple controverting versions of events. Such self-serving, contradictory allegations are not competent summary judgment evidence and cannot be considered. Plaintiff's Response has failed to establish a retaliation claim as a matter of law and it must therefore be dismissed.

### 3.     Plaintiff Concedes UPS's Post-Complaint Conduct Is Not Retaliatory.

In its Motion, Defendant established that there is no evidence of any retaliatory conduct at UPS following Plaintiff's complaint of race discrimination to the UPS Management Committee in June 2008. (Mot. at 47-48.) Plaintiff did not dispute UPS's arguments and authorities. (Resp. *passim.*) Thus his claim for retaliation must be dismissed.

### E.     Plaintiff Has Presented No Evidence Of Lost Wages Or Lost Benefits, And He Continues Getting Pay Raises.

In its Motion, UPS established that Howard suffered no loss in wages or change in benefits following his demotion. He has also continued receiving regular pay raises. (Mot. at 48-49.) In his Response, while admitting he experienced no cut in pay, Howard contends that he no longer receives a stock option benefit as a result of his demotion. (Resp. at 28.) That claim flies in the face of his deposition testimony wherein he admitted that he has suffered *no* change

---

[21] Importantly, Mr. Howard was only assigned to Tulsa for approximately one month during February and March 2008. (Mot. at 25.) Thus the conduct he complains of here also predates his first discrimination complaint in

23

in benefits. (Mot. Ex. 12, Howard Dep. at 349, 422, Mot. App. at 381, 395.) Once again, assertions of fact that contradict prior deposition testimony are not competent summary judgment evidence and will not preclude a motion for summary judgment from being granted. *See Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657, 670 (5th Cir. 2004); *Owens v. Fed. Express Corp.*, No. Civ. A. 3:04-CV-0346-P, 2005 WL 323720, at *1 n.3 (N.D. Tex. Feb. 9, 2005); *Sweet v. Dallas Indep. Sch. Dist.*, No. 3:02-CV-0406-P, 2004 WL 86308, at *5 (N.D. Tex. Jan. 15, 2004).

Moreover, Defendant's Motion also established that there is no evidence Howard's pay or benefits are materially different than similarly situated non-Black employees who have not complained of discrimination. (Mot. at 48-49.) Plaintiff did not respond to these allegations in his Response. (Resp. *passim*.) There is no evidence that Howard would have received stock options or grants had he not been demoted and there is no evidence that Howard's overall compensation and benefits package would be any greater if he remained at Grade 18 than he has received as a Grade 16 manager. Given that Plaintiff has presented no evidence that he suffered damages with respect to his pay and benefits, summary judgment should be granted as a matter of law on Plaintiff's damages claims.[22]

### III.
### CONCLUSION

Plaintiff pursued this case for well over a year based on broad claims of a pattern and practice of race discrimination in connection with job advancement, compensation, and working conditions. Plaintiff's Response abandons those claims. Nevertheless, Howard continues

---

June 2008. There can be no possible causal connection to protected activity.

[22] Howard even acknowledges how well off he is because of his career at UPS. (Mot. Ex. 12, Howard Dep. at 65-66, Mot. App. at 330.)

litigating this case without addressing multiple grounds for summary judgment applicable to the discriminatory demotion and hostile work environment claims he purports to assert. Plaintiff fails to identify a shred of evidence raising a genuine issue of material fact for trial. Rather, Plaintiff's Response makes numerous misrepresentations of evidence and self-contradictory statements that should not be countenanced. Even if every factual allegation made in Plaintiff's Response is credited, there is no basis for finding that Howard experienced a racially hostile work environment, nor is there any evidence he was demoted for unlawful reasons. As a result, Defendant United Parcel Service, Inc.'s Motion For Summary Judgment should be granted.

DATED: November 19, 2010                    Respectfully submitted,

                                            /s/ John V. Jansonius
                                            John V. Jansonius
                                            State Bar No. 10571900
                                            jjansonius@akingump.com
                                            Joshua Flynt
                                            State Bar No. 24053204
                                            jflynt@akingump.com
                                            Akin Gump Strauss Hauer & Feld LLP
                                            1700 Pacific Avenue, Suite 4100
                                            Dallas, Texas 75201-4618
                                            Telephone: 214-969-2800
                                            Facsimile: 214-969-4343

                                            **COUNSEL FOR DEFENDANT**
                                            **UNITED PARCEL SERVICE, INC.**

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that, on November 19, 2010, a true and correct copy of this instrument was filed electronically, notice of the filing was served on Counsel for Plaintiffs by operation of the Court's electronic filing system, and the parties may access this filing by and through the Court's electronic filing system.

                                            /s/ John V. Jansonius
                                            John V. Jansonius

#200277888