IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CEDRIC HOWARD, §
 §
  Plaintiff, §
 § Civil Action No.
v. §
 § 3:09-CV-2074-K
UNITED PARCEL SERVICE, INC., §
 §
  Defendant. §

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant United Parcel Service, Inc.'s ("UPS") Motion for Summary Judgment (Doc. No. 52) and UPS's Objections to Plaintiff Cedric Howard's Evidence (Doc. No. 84). UPS has demonstrated that no genuine issue of material fact exists in regards to any of Mr. Howard's claims because he was terminated for legitimate, non-discriminatory reasons and a hostile work environment did not exist at UPS. UPS's Motion for Summary Judgment is **GRANTED** and all of Mr. Howard's claims are **DISMISSED with prejudice**. UPS's Objections to Mr. Howard's Evidence are **DENIED as moot** because this Court reaches the same decision with or without Mr. Howard's evidence.

## I. Background

Mr. Howard, an African-American man, has been employed by UPS continuously since October 1982, when he was hired as an administrative clerk after graduating from

high school.  Three years later, Mr. Howard became a driver for UPS's ubiquitous delivery vans, known within the company as "package cars."  In 1991, Mr. Howard began driving "feeder trucks," the tractor-trailer rigs used to transport larger numbers of packages over longer distances.  For his first sixteen years with UPS, Mr. Howard delayed consideration for promotion into management because of concern over the strain it would place on his family.  As a Teamsters' member truck driver, Mr. Howard retained greater control over his work hours.

In July 1998, Mr. Howard made the transition to Feeder On-Road Supervisor, where he coordinated roughly forty feeder truck drivers.  Over the next four years, Mr. Howard moved through several positions within the UPS feeder and packages divisions. He was promoted to Feeder Manager at UPS's Fort Worth, Texas hub in 2002, which is considered a mid-level management position within the company.  Hubs are regional centers through which UPS sorts and routes packages, either for further shipment or for delivery to customers.  In 2005, Mr. Howard made a lateral transfer to become the Feeder Dispatch Manager at the Mesquite, TX hub, a suburb of Dallas, where he oversaw the scheduling and dispatch of feeder drivers.

In June of 2007, Mr. Howard was promoted to Feeder Division Manager in the Red River District, based out of Oklahoma City.  Previously, Mr. Howard had worked in the North Texas District, primarily in the Dallas/Fort Worth area.  As the Feeder Division Manager, Mr. Howard reported to Nancy Koeper, the Red River District

Manager. This promotion marked a move up for Mr. Howard into the next level of UPS management.

The transition to his new job in Oklahoma City was not entirely smooth. Mr. Howard experienced several problems in his first few months on the job, including: (1) an exchange with a security guard over a reserved parking spot; (2) changing job classifications of union employees in his division, which affected the employees' hourly pay rates; (3) sending excessive e-mails to his subordinates, including copying clerical workers on management e-mails; and (4) conflicts with his subordinates over allegedly coerced support of the United Way charity. Mr. Howard asserts, and this Court will assume for the purposes of this motion, that Ms. Koeper, his supervisor, stated "you Texas boys come to my district and think you're going to do things your way. . ." in a meeting with him in July 2007 to discuss some of these issues. Mr. Howard interpreted the term "boy" as a racial slur.

While driving to Lubbock, Texas on a business trip sometime toward the end of 2007, Mr. Howard, Ms. Koeper, and two other co-workers were stopped by a Texas state trooper. Mr. Howard asserts, and this Court will assume for the purposes of this motion, that Ms. Koeper opined the state trooper would not have pulled the car over but for the presence of Mr. Howard in the back seat. All of the other occupants of the car were Caucasian. Mr. Howard interpreted this statement as a comment on his race.

The holidays, from mid-November until early January, are busy for UPS. Planning sessions for what the company calls its "peak time" occur in September each year. Mr. Howard asserts, and this Court will assume for the purposes of this motion, that he unsuccessfully requested "peak time" plans from 2006 to help him prepare for his first year as Feeder Division Manager. In December 2007, during "peak time," Mr. Howard's division experienced several major problems: (1) three shipments comprising hundreds of packages were delayed en route to customers; (2) UPS committed federal service hour violations, intended to limit the number of hours a driver may work; and (3) some drivers were paid triple overtime due to staffing shortages. Following an internal investigation, UPS concluded that Mr. Howard was responsible for the problems and that he had not been forthright on a number of the matters investigated. UPS concluded that Mr. Howard had pleaded ignorance as to the consequences of several of his actions when in fact he had discussed them previously with other managers. Mr. Howard asserts, and this Court will assume for the purposes of this motion, that other managers and contract obligations were to blame for the issues UPS investigated.

Mr. Howard was demoted back to Feeder Manager on February 11, 2008, a job he had previously held at several UPS locations in the Dallas/Fort Worth area. The Feeder Division Manager position which Mr. Howard had held was eliminated and the duties were absorbed by another manager. Though his salary was not cut, Mr. Howard asserts, and this Court will assume for the purposes of this motion, that he lost stock

options and relocation expense benefits as a result of the decision.  Mr. Howard was temporarily assigned to the Tulsa hub, and from there moved through several more jobs before returning to the Mesquite, Texas hub, where he remains as the Feeder Dispatch Manager.

Mr. Howard filed complaints of racial discrimination and retaliation in a letter to UPS's company management committee in June 2008.  In that letter, Mr. Howard claimed racial discrimination was the motivation behind his demotion and the lack of consequences for Caucasian employees that had experienced similar problems.  James Grover, a member of UPS's human resources team, was sent to investigate the claims.  Mr. Grover interviewed  Mr. Howard and other staff members in the Red River District offices, in addition to reviewing documents from both Mr. Howard and other employees.  Mr. Grover concluded his investigation and informed Mr. Howard in September 2008 that Mr. Grover could not substantiate any of Mr. Howard's claims.

Mr. Howard filed suit for employment discrimination and related claims under 42 U.S.C. § 1981 on August 26, 2009.  Mr. Howard did not pursue redress with either the Equal Employment Opportunity Commission ("EEOC") or the Texas Workforce Commission ("TWC") before filing suit.  UPS filed this Motion for Summary Judgment on October 15, 2010 and its Objections to Mr. Howard's Evidence on November 19, 2010.

## II.     Summary Judgment Standard

Summary judgment is appropriate when the pleadings, affidavits, and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Triple Tee Golf, Inc. V. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007).  The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 322–25.  Once a movant makes a properly supported motion, the burden shifts to the non-movant to show that summary judgment should not be granted; the non-movant may not rest upon the allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–57 (1986).

A genuine issue of material fact exists if a reasonable jury could return a verdict for the non-moving party in the face of all evidence presented.  *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009).  A fact is material if it could affect the outcome of the lawsuit under the governing law.  *Id.*  All evidence and reasonable inferences must be viewed in the light most favorable to the non-movant.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

III.    **Analysis**

Initially, this Court must examine Mr. Howard's complaint to determine the causes of action he has chosen to pursue.  The Original Complaint (Doc. No. 1) asserts claims for relief under 42 U.S.C. § 1981, originally part of the Civil Rights Act of 1866. Section 1981 provides an alternative remedy to the more familiar Title VII claims that were passed under the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*  A § 1981 claim, unlike its Title VII counterpart, need not first exhaust administrative remedies before the EEOC, or an equivalent state agency such as the TWC, before suit may be brought.  *Hill v. Am. Airlines Inc.*, 479 F.2d 1057, 1060 (5th Cir. 1973).  Mr. Howard's failure to do so is not fatal to his claims.

Second, though the theories of recovery under § 1981 Mr. Howard is pursuing are not exactly clear from his complaint, his response to UPS's motion for summary judgment focuses on three theories of recovery: (1) a racial discrimination claim; (2) a claim for retaliation based on his demotion; and (3) a hostile work environment claim. Mr. Howard's complaint clearly touches upon the subject matter on which these claims are based, and UPS was put on notice of these claims to the extent that all three were included as grounds for summary judgment in UPS's original motion.  Consistent with federal pleading policy, this Court will broadly construe Mr. Howard's complaint to assert those causes of action and will consider each in turn.  *See* Fed. R. Civ. P. 8(e) (pleadings must be construed so as to do justice); *see also Hussain v. Boston Old Colony Ins.*

*Co.*, 311 F.3d 623, 633 n. 39 (5th Cir. 2002) (pleadings are to be construed liberally, according to their substance rather than their label).

### A.    Racial discrimination

Both Title VII and § 1981 claims are "governed by the same evidentiary frame work," meaning analysis of claims under each statute is substantively the same. *Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010).   Therefore, this Court will apply precedent under both types of cases to resolve this motion.   A Title VII racial discrimination claim can be established through either direct or circumstantial evidence. *Jones v. Robinson Property Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2004).   Direct evidence is evidence which, if believed, proves the fact without inference or presumption. *Brown v. E. Miss. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993).   Mr. Howard has presented no direct evidence of racial discrimination, that is, no testimony or documentation that states he was demoted by UPS because he is African American. Therefore, his claim for racial discrimination will be decided under the *McDonnell Douglas* burden–shifting framework used for circumstantial evidence.   *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 426 (5th Cir. 2000).

To present a *prima facie* case of racial discrimination under *McDonnell Douglas*, a plaintiff must demonstrate: (1) that he belongs to a racial minority; (2) that he was qualified for the position; (3) that he suffered an adverse employment decision; and (4) that he was replaced by someone outside the protected group or was treated less

favorably than others similarly situated. *Id*. If the plaintiff presents a *prima facie* case of racial discrimination, the burden shifts to the defendant to produce a legitimate, non-discriminatory reason for the adverse employment action. *Johnson v. Louisiana*, 351 F.3d 616, 622 (5th Cir. 2003). If a legitimate, non-discriminatory reason for the adverse employment action is given, the burden shifts back to the plaintiff to show the reason is a pretext for discrimination. *Id*. at 621.

### 1. *Prima facie* case of race discrimination

In both its motion and its reply, UPS contends that Mr. Howard cannot make a *prima facie* case of racial discrimination because there are no similarly situated employees who were treated more favorably than Mr. Howard under nearly identical circumstances. UPS does not dispute any of the other factors.

In addition to being treated less favorably under similar circumstances, Mr. Howard may establish the fourth prong of his *prima facie* case by showing he was replaced by someone outside his protected group. *Byers*, 209 F.3d at 426. Following Mr. Howard's demotion, his former duties were assumed by Gary Barnett, who until that point had acted as the Hub Division Manager for the Red River District. Howard Depo. at 353–54, App. to UPS Mot. at 382 (hereinafter "UPS App."). Mr. Barnett continued serving as Hub Division Manager, adding Mr. Howard's former duties to his own. *Id*. It is undisputed that Mr. Barnett is not African American. Howard Aff. at ¶ 61, Howard App. at 275 (hereinafter "Howard App."); UPS Reply at 12.

UPS asserts Mr. Howard was not replaced after he was demoted; rather, his position was eliminated and his duties were assumed by another manager. UPS Reply at 12. When Mr. Howard was demoted and his responsibilities were absorbed by another, non–African American manager, he met the requirements of a *prima facie* case. *See Young v. Harris Health Care, Inc.*, 226 F.3d 643 at *3 (5th Cir. 2000) (involving both age and race discrimination claims). In *Young*, the Fifth Circuit rejected that type of reasoning when an older woman was terminated and her former job duties were split among three new, younger employees, concluding that (1) the elimination of one position and (2) the redistribution of former job duties still met the plaintiff's burden. *Id.*

Coupled with the low hurdle the plaintiff must clear at this stage, *id.* (citing *Guthrie v. Tifco Indus.*, 941 F.2d 374, 377 (5th Cir. 1994)) (only a "very minimal showing" is required to make out a *prima facie* case), the Court finds Mr. Howard has presented a *prima facie* case of race discrimination.

### 2. Legitimate, non-discriminatory reasons for Mr. Howard's demotion

Once an employee has made out a *prima facie* case of race discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). UPS has consistently maintained that Mr. Howard was demoted for poor job performance and dishonesty. *See* Koeper Decl. ¶ 44, UPS App. at 268; Howard Depo.

at 333–34, UPS App. at 377 ("Nancy said that the district had lost confidence in me.
. ."); Letters from Human Resource Manager Cathy Buck-Lehmann, UPS App. at
313–21 (discussing hours violations, possible contract violations, and Mr. Howard's
knowledge of these problems). Even an incorrect belief that an employee's performance
is inadequate constitutes a legitimate, non-discriminatory reason for an adverse
employment action. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir.
1995). UPS has met its burden.

### 3. Were the reasons given by UPS a pretext for race discrimination?

If an employer advances a legitimate, non-discriminatory reason for an adverse
employment action, the employee is given an opportunity to prove that the reason is a
pretext for discrimination. *Jackson*, 619 F.3d at 466. Mr. Howard argues that
inconsistent explanations for an employment decision allows a fact finder to infer that
an employer's reasons are pretextual. *See Gee v. Principi*, 289 F.3d 342, 347–48 (5th Cir.
2002) (finding fact issue sufficient to overturn summary judgment where non-
discriminatory reasons for failure to promote were inconsistent).

Mr. Howard asserts that, at various times, UPS has stated he was demoted
because: (1) Ms. Koeper, the Red River District Manager, has lost confidence in him,
Koeper Decl. at ¶ 44, UPS App. at 268; (2) Mr. Howard had allegedly threatened
employee compensation for failure to participate in the United Way charity program,
Koeper Depo. at 152, UPS App. at 249; (3) Mr. Howard was responsible for the "peak

time" issues in his division, Howard Aff. at ¶ 47, Howard App. at 271–72; and (4) Mr. Howard was performing his job inadequately and lacked integrity, Koeper Decl. at ¶ 44, UPS App. at 268. Mr. Howard also questions UPS's motives because he was not immediately disciplined for the United Way incident, Resp. at 37, and he was not placed on a performance improvement plan, *id*.

UPS argues that, contrary to proving pretext, the list of grievances Mr. Howard cites reinforces its decision to demote him. *See Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 807 (5th Cir. 2007) (final disciplinary problem was "last straw" after fourteen previous incidents). This fact situation is distinguishable from the one presented in *Gee* because UPS has never retracted and offered new or different explanations for Mr. Howard's demotion. *Gee*, 289 F.3d at 347–48. That Mr. Howard was not immediately disciplined by UPS for the alleged coercion concerning United Way gifts and that he was not placed on a performance improvement program are little, if any, evidence that UPS's other reasons are pretextual in nature. *See Udoewa v. Plus4 Credit Union*, No. H-08-3054, 2010 WL 4722478 (S.D. Tex. Nov. 15, 2010) (courts typically abstain from second-guessing an employer's business judgment). Instead, this Court agrees that UPS has only enumerated multiple legitimate reasons for the company's decision to demote Mr. Howard.

Also, UPS has submitted evidence that it investigated both: (1) the problems experienced by Mr. Howard's division during "peak time" in 2007, including the delivery

delays and federal standard violations discussed above, Letters from Cathy Buck-Lehmann, UPS App. at 313–21; and (2) the allegations made by Mr. Howard in his letter to UPS's company management committee, Letters from Howard and Grover, UPS App. at 116–28. If UPS was incorrect in its belief that Mr. Howard was responsible for the problems and allegations investigated, there is no evidence of pretext absent a showing that the belief was not held in good faith. *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 489 (5th Cir. 2004). Mr. Howard's allegations that the investigations were imperfect or incomplete are equally insufficient. *Id.*

The same actor inference also applies in this case. The inference states that if the actor that hired or promoted the plaintiff is the same actor that fired or demoted the plaintiff, a presumption of non-discrimination applies. *Hervey v. Miss. Dept. of Educ.*, No. 10–60096, 2010 WL 5129726 at *6 (5th Cir. Dec. 13, 2010). The logic is that "it would hardly make sense to hire workers from a group one dislikes. . . only to fire them once they are on the job." *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991)(citation omitted). Here, Ms. Koeper was the same actor that both promoted Mr. Howard to Feeder Division Manager in Oklahoma City and later demoted him. *See* Howard Depo. at 168–170, UPS App. at 349; Howard Depo. at 333–36, UPS App. at 377.

Considering all the evidence from Mr. Howard and UPS, coupled with the same actor inference, this Court concludes that, though Mr. Howard has presented a *prima facie* case of race discrimination, he has failed to create a genuine issue of material fact

that would preclude summary judgment on his claim for race discrimination.

## B.    Retaliation

As with Mr. Howard's race discrimination claim, this Court will broadly construe his pleadings to include a claim for retaliation. *Boston Old Colony Ins. Co.*, 311 F.3d at 633 n. 39. Like race discrimination, retaliation may be proved by either direct or circumstantial evidence. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). If the plaintiff presents circumstantial evidence, the familiar *McDonnell Douglas* burden shifting framework is used. *Id*. If the plaintiff presents a *prima facie* case of retaliation, the burden shifts to the employer to advance a legitimate, non-discriminatory reason for the adverse employment action. *Gee*, 289 F.3d at 345. To overcome an employer's legitimate, non-discriminatory reason, the plaintiff must show it is a pretext for discrimination. *Id*.

### 1.    *Prima facie* case

A *prima facie* case of retaliation consists of: (1) the plaintiff engaging in a protected activity; (2) an adverse employment action; and (3) a causal connection that exists between the protected activity and the adverse employment action. *LeMaire v. La. Dept. of Transp. & Dev.*, 480 F.3d 383, 388 (5th Cir. 2007). An employee has engaged in a "protected activity" if he has either (1) opposed any employment practice made unlawful by Title VII or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under Title VII. *Grimes v. Tex. Dept. of Mental Health*

*& Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996). An adverse employment action is one that would dissuade a reasonable worker from making or supporting a charge of discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

### a.    Protected Activity

Mr. Howard asserts that he engaged in a protected activity when he informed West Region Transportation Manager Bob Hannigan of Ms. Koeper's "Texas boy" comment. Howard Aff. ¶ 21, Howard App. at 264. In return, UPS argues that Mr. Howard has previously denied he reported the "Texas boy" comment before his letter to UPS's company management committee in June 2008, four months after his demotion. *See Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 137 n. 23 (5th Cir. 1992) (finding a fact issue was not created when a plaintiff contradicted his earlier testimony). This would mean that UPS could not possibly have demoted Mr. Howard in February 2008 for a letter he wrote in June 2008.

UPS is correct that this assertion contradicts Mr. Howard's deposition testimony, Howard Depo. at 371–72, UPS App. at 385 (stating June 2008 was the first time he had reported the "Texas boy" comment), which would normally mean it is insufficient to create a fact issue. *Thurman*, 952 F.2d at 137 n. 23. However, this comment is acknowledged earlier than June 2008 at least twice in evidence submitted by UPS: (1) Mr. Hannigan states that Mr. Howard mentioned the "Texas boy" comment by, at the

latest, September 2007, Hannigan Decl. at ¶ 12, UPS App. at 171; and (2) Joe Doole, the Red River District Human Resources Manager, states he knew Ms. Koeper was upset that Mr. Howard had contacted Mr. Hannigan about the "Texas boy" comment in September 2007, Doole Depo. at 31 l. 8–13, UPS App. at 56. This Court finds there is sufficient evidentiary support that Mr. Howard reported the "Texas boy" comment to Mr. Hannigan before he was demoted in February 2008.

UPS asserts that, even if Mr. Howard reported the comment to Mr. Hannigan, Mr. Howard has presented no evidence that he informed Mr. Hannigan he found the comment to be racially motivated. The evidence is consistent that Mr. Howard found the comment offensive, to the point that he reported it to several supervisors and prompted an investigation from UPS's corporate offices. Howard Depo. at 392, UPS App. at 390; Grover Decl. at ¶ 11, UPS App. at 112; Grover Letter, UPS App. at 128. This Court finds it unlikely that Mr. Howard would have reported Ms. Koeper's comment but did not assert to Mr. Hannigan that he was offended by it. *Diebold*, 369 U.S. at 655 (evidence must be viewed in the light most favorable to the non-movant).

Given the minimal burden to present a *prima facie* case, this Court finds that Mr. Howard has identified sufficient evidence to show he was engaging in a protected activity when he reported Ms. Koeper's "Texas boy" comment to Mr. Hannigan. *Guthrie*, 941 F.2d at 377.

### b. Adverse Employment Action

A demotion is an ultimate employment decision under Title VII, qualifying as an adverse employment action. *Sharp v. City of Houston*, 164 F.3d 923, 933 n. 21 (5th Cir. 1999). UPS argues that Mr. Howard has not suffered an adverse employment action because his salary was not cut and he has presented no evidence that his position at UPS was negatively affected. This ignores the change in job duties Mr. Howard experienced when he was demoted from Feeder Division Manager back to a Feeder Manager. As testified to by both Ms. Koeper and Mr. Hannigan, the move up to Oklahoma City meant Mr. Howard would have much more responsibility as the Feeder Division Manager. Koeper Decl. at ¶ 13–15, UPS App. at 263–64; Hannigan Decl. at ¶ 5–7, UPS App. at 170–71. When Mr. Howard was demoted in February 2008, his responsibilities as Feeder Division Manager were assumed by Mr. Barnett. Howard Depo. at 353–54, UPS App. at 382. Personnel decisions that affect job duties qualify as adverse employment actions. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004). Therefore, Mr. Howard has met his burden to demonstrate he experienced an adverse employment action because his job duties were reduced.

### c. Causal Connection

As the final element of Mr. Howard's *prima facie* case of retaliation, he must show that there was a causal connection between his protected activity and the adverse employment action. *LeMaire*, 480 F.3d at 388. Mr. Howard points to Ms. Koeper's

statements that she felt uncomfortable meeting with him one-on-one following a conversation she had with Mr. Hannigan about the "Texas boy" comment, Koeper Decl. at ¶¶ 24–27, UPS App. at 265–66, and that Ms. Koeper ultimately demoted him, Howard Depo. at 333–36, UPS App. at 377. With this evidence, and the lower standard for causation at the *prima facie* stage, *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001), Mr. Howard has met his burden to show a causal connection between engaging in a protected activity and his adverse employment action.

### 2. Legitimate, non-discriminatory reasons for Mr. Howard's demotion

Like a charge of racial discrimination, an employer must provide a legitimate, non-discriminatory reason for the adverse employment action if the employee has presented a *prima facie* case of retaliation. *McCoy*, 492 F.3d at 557. UPS provides the same reasons for Mr. Howard's retaliation claim that it provided for his race discrimination claim. As before, this Court accepts poor job performance and integrity issues as legitimate, non-discriminatory reasons for Mr. Howard's adverse employment action. UPS has met its burden.

### 3. Were the reasons given by UPS pretext for retaliation?

Once an employer has provided a legitimate, non-discriminatory reason for an adverse employment action, the burden shifts back to the employee to prove that the proffered reason is a pretext for retaliation. *Gee*, 289 F.3d at 345. Mr. Howard advances the same evidence that the reasons advanced by UPS are pretext for retaliation as he did

for his race discrimination claim.  And, for the same reasons as his race discrimination claim, this Court finds that Mr. Howard has failed to raise a genuine issue of material fact as to his claim for retaliation: (1) UPS has consistently stated the reasons for Mr. Howard's demotion were poor job performance and integrity issues; (2) UPS investigated both the problems associated with Mr. Howard's division during "peak time" in 2007 and his claims of discrimination; and (3) the same actor inference applies to retaliation claims just as it does to race discrimination claims, *Harris v. Fritz Companies, Inc.*, 1999 WL 61413 at *5 (N.D. Tex. Jan. 27, 1999) (Buchmeyer, C.J.) (citing *Nieto v. L & H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997)).

Though Mr. Howard has presented a *prima facie* case of retaliation, he has not presented sufficient evidence to create a genuine issue of material fact that the legitimate, non-discriminatory reasons UPS has provided for his demotion are pretext for retaliation.

## C.    Hostile Work Environment

As his final cause of action, Mr. Howard asserts that UPS maintained a racially hostile work environment at the Red River District offices.  To prove a hostile work environment claim, a plaintiff must show: (1) he belonged to a protected class; (2) he was subject to unwelcome harassment; (3) the harassment was based on his status as a member of a protected class; (4) the harassment was severe or pervasive, such that it altered the conditions of employment and created an abusive environment; and (5) there is a basis for employer liability.  *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999)

(applied in the context of a sexual harassment claim).

It is undisputed that Mr. Howard is a member of a protected class as an African American man. UPS argues that Mr. Howard was not subjected to unwelcome harassment and, even if he was, it did not rise to the level of "severe or pervasive."

During this type of analysis, it is important to recognize the purpose of our civil rights and equal employment law. A high standard is imposed for these types of claims. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("Title VII [is not] a general civility code."). Many things that may not rise to the level of violations are still distasteful and should be discouraged in the workplace. It is in this vein that the U.S. Supreme Court has commented that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Id.*

Mr. Howard cites a list of occurrences that he claims established a racially hostile work environment at the Red River District offices: (1) allegations by former Red River District employee Leonard Hudson that Mr. Hudson had overheard racial slurs and experienced discrimination during his time there; (2) Mr. Howard experienced a deterioration in his working conditions after reporting Ms. Koeper's "Texas boy" comment; (3) that several UPS employees believed use of the term "boy" in reference to an African American male is not offensive; (4) the use of the term "boy" was common at UPS's Red River District offices; (5) Mr. Doole, Red River Human Resources

Manager, stated Mr. Howard had a "target on his back"; (6) Mr. Howard was admonished for arguing with a security guard regarding a parking space; (7) Mr. Howard's actions were questioned after he moved a subordinate's office; (8) employees filed false complaints accusing Mr. Howard of coercing United Way contributions; (9) employees were encouraged to complain about Mr. Howard by Ms. Koeper; and (10) Mr. Howard was required to drive his own car to Tulsa after his demotion and stay in a hotel while his subordinate could drive a UPS rental car home each night.

First, only conduct experienced by Mr. Howard may be considered when deciding if he was subjected to a hostile work environment. *See Septimus v. Univ. of Houston*, 399 F.3d 601, 612 (5th Cir. 2005) (as noted in the context of gender discrimination); *see also Johnson v. TCB Const. Co.*, 334 F. App'x 666, 671 (5th Cir. 2009) (racial slur uttered outside the plaintiff's presence was not evidence of a hostile work environment). What Mr. Hudson may have experienced while employed at the Red River offices is not relevant to the circumstances surrounding Mr. Howard's work environment. Both Mr. Howard's first and fourth allegations stem from Mr. Hudson's declaration.

Second, Mr. Howard's third assertion, that Mr. Hannigan and Ms. Koeper do not find the use of the term "boy" in reference to African American men offensive, does not find strong support in the passages he cites. *See* Hannigan Depo. at 80–81, UPS App. at 148–49; Koeper Depo. at 118–20, UPS. App. at 241. Ms. Koeper responds she would not use such language and would involved human resources if she overheard others using

similar words.  Koeper Depo. at 118–19, UPS App. at 241.  Mr. Hannigan was not even asked if he found the use of the word "boy" offensive or discriminatory.  Hannigan Depo. at 80–81, UPS App. at 148–49.

Of the seven remaining examples provided by Mr. Howard, only number two arguably touches on his identity as an African American man.  Comments much more offensive than "Texas boy" have been found not to create a hostile work environment.  *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (compiling examples).  The case on which Mr. Howard primarily relies, *Abner v. Kan. City S. R.R. Co.*, 513 F.3d 154, 165 (5th Cir. 2008), presented a very different situation than the one Mr. Howard described at the Red River District offices of UPS.  In *Abner*, threats of violence and multiple racial slurs were commonplace among both the plaintiff's co-workers and supervisors.  *Id*.  Here, Mr. Howard primarily alleges a single incident that was not repeated.

Because Mr. Howard cannot show that harassment at UPS was severe or pervasive to the point it created an abusive environment, he has failed to present evidence that creates a genuine issue of material fact as to his claim for a hostile work environment.

D.    **UPS's Objections to Mr. Howard's Evidence**

UPS objects to large portions of Mr. Howard's evidence as irrelevant, speculative, conclusory, lacking foundation, and/or based on hearsay.  Because this Court reaches the same decision whether or not it considers all of Mr. Howard's evidence, UPS's objections

are moot.

**IV.    Conclusion**

Mr. Howard has failed to present evidence raising a genuine issue of material fact as to his claims for race discrimination, retaliation, and a hostile work environment. Therefore, UPS's Motion for Summary Judgment is **GRANTED** and Sadler's claim is **DISMISSED with prejudice**.    UPS's Objections to Mr. Howard's Evidence are **DENIED as moot**.

**SO ORDERED**

Signed January 18th, 2011.

*Ed Kinkeade*

ED KINKEADE
UNITED STATES DISTRICT JUDGE